## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————————

PHILLIP W. FOX,

             Plaintiff,

      v.

COMPUTER WORLD SERVICES
CORP., *et al.*,

             Defendants.

———————————————————————

)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 12-0374 (ABJ)

### MEMORANDUM OPINION

Plaintiff Phillip Fox has sued his former employers:  Computer World Services Corp. ("CWS"); C2 Essential, Inc. ("C2"); Farrukh Hameed, President and CEO of CWS; and Kimberly Lundy, Director of Strategic Human Resources for C2.  He brings this action under the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1402.11 *et seq*, and District of Columbia common law, alleging age discrimination, retaliation, and failure to pay earned bonus compensation.  Compl. [Dkt. # 1-1] ¶¶ 1, 61–109.  In response, defendants have moved to dismiss the case on the grounds that the Court should compel Fox to arbitrate his claims in accordance with an arbitration agreement between the parties.  For the reasons set forth below, the Court concludes that the arbitration agreement is enforceable and that Fox must arbitrate his claims against all defendants.  Therefore, it will grant defendants' motions to dismiss and compel arbitration.

### BACKGROUND

The following facts are undisputed except where noted.  Defendant CWS is an information technology solutions and network operations company that outsources its recruiting,

human resources, and other back-office administrative functions to co-defendant C2.  Compl. ¶¶ 5, 6; Fox Affidavit, Ex. 1 to Pl.'s Reply in Opp. to Defs.' Mot. to Dismiss [Dkt. # 24-1] ("Fox Aff.") ¶¶ 3, 7.  The relationship between CWS and C2 is governed by a joint employment agreement whereby C2 acts as a "co-employer" and "share[s] many employer liabilities" with CWS.  Compl. ¶ 12.  Pursuant to this relationship, C2 recruited Fox for employment with CWS and on September 25, 2009, Fox received an employment offer letter from CWS.  Fox Aff. ¶ 3; CWS Employment Offer Letter, Ex. 1 to Compl. ("Employment Offer Letter").  The letter outlined the terms of Fox's employment with CWS including the requirement that "any disputes arising out of the employment relationship [] be resolved by arbitration . . . ."  Employment Offer Letter at 3.  The letter directed Fox to indicate his acceptance of the offer and its terms by signing and returning the letter.  *Id.* at 2.  Fox never signed the offer letter but he asserts in his complaint that he "accepted" its terms and began working for CWS on September 30, 2009, as the Director of Bids and Proposals/Chief Engineer.  Compl. ¶¶ 9–10, 13.

On his first day of work, Fox attended a new employee orientation that was conducted by a C2 employee.  Fox Aff. ¶ 8; *see also* Catherine Gouldin Affidavit, Ex. A to C2 Reply in Supp. of Mot. to Compel. Arb. ("C2 Reply") [Dkt. # 26-1] ¶ 3.  During the orientation, the C2 employee asked Fox to review, acknowledge, and complete a number of online forms including an arbitration agreement that provided in part:

> I understand that the term "C2" in this Agreement is defined to include C2, any other entity that is a signatory to this Agreement including without limitation any client who may be a signatory to this Agreement, any subsidiary and affiliated entities . . . .  All parties to this agreement agree to the resolution by arbitration of all claims, disputes or controversies ("Claims"), whether or not arising out of my employment, or its termination, that all or any of the entities identified collectively as "C2" may have against me or that I may have against all or any such C2 entities, or against their respective officers, directors, employees or agents.  The claims covered by this Agreement include, but are not limited to, Claims

for wages or other compensation due; Claims for breach of any contract or covenant (express or implied); tort Claims; Claims for discrimination of any kind . . . and Claims for violation of any federal, state, or other governmental law, statute, regulation, ordinance . . .

[**Administrative Claims**:]  Except for claims that I may have for workers' compensation or unemployment compensation, all parties to this agreement agree not to initiate or prosecute any lawsuit or administrate action in any way related to any Claim covered by this Agreement, other than as set out in this Agreement.

**Required Notice of All Claims and Statute of Limitations**:  All parties to this agreement agree that one bringing a Claim must give written notice of any such Claim to the other party within six (6) months. . . . Otherwise, the claim shall be void and deemed waived even if there is a federal or state statute of limitations that would have given more time to pursue such Claim.

**Discovery**:  Each party shall have the right to take the deposition of one individual and any expert witnesses designated by another party. . . . Additional discovery may be had only where the arbitrator . . . so orders, upon a showing of substantial need.

Either party, at its expense, may arrange for and pay the cost of a court reporter . . . .

**Arbitration Fees and Costs**:  All parties to this agreement agree to share the fees and costs of the arbitrator.  If I am initiating the claim, I am responsible for $150 towards the filing fee . . . Each party will deposit funds for its share of the arbitrator's fee, in an amount and manner determined by the arbitrator. . . .

Agreement to Arbitrate, Ex. 2 to Compl. at 1–2; Fox Aff. ¶ 9.  The arbitration agreement ("Agreement") included signature lines for "Employee" on one side and for "C2 Portfolio Essentials, Inc." and a "Co-Employer" on the other side.  Agreement to Arbitrate at 3.  Fox electronically signed the arbitration agreement on September 30, 2009, and a C2 representative signed it two days later on October 2, 2009.  *Id.*  CWS never signed the signature line for a "co-employer" and was never mentioned by name in the agreement.  *Id.*

In his complaint, Fox asserts that on March 7, 2011, defendants Hameed, president and CEO of CWS, and Lundy, Director of Strategic Human Resources for C2, "summarily

3

terminated [him] – effective immediately – because his 'position was being eliminated due to the lack of new business and the need for his technical skill set.'" Compl. ¶ 37.  In an exchange of letters between March 11 and May 6, 2011, Fox accused CWS and C2 of terminating him because of his age in violation of the Age Discrimination in Employment Act and demanded additional compensation according to the terms of the CWS employment offer letter.  Fox Letters to CWS and C2 (March 11, 2011 and April 1, 2011), Exs. 3–4 to Compl.  Both companies disputed Fox's allegations and directed Fox to submit his claims to arbitration pursuant to the arbitration agreement.  Letters from CWS and C2 and Their Attorneys (March 28, 2011 and May 6, 2011), Exs. 4 and 6 to Compl.  In an April 1, 2011 letter to defendants, Fox questioned the enforceability of the arbitration agreement and refused to submit his claims to arbitration.  Fox Letter to CWS and C2, Ex. 4 to Compl. at 1–2.  On August 23, 2011, Fox filed a discrimination and retaliation claim against CWS with the Equal Employment Opportunity Commission ("EEOC").  Fox EEOC Claim, Ex. B to C2 Reply [Dkt. # 26-2].

On January 25, 2012, Fox filed an action against CWS and C2 under the DCHRA and D.C. common law in the District of Columbia Superior Court alleging age discrimination, retaliation, and failure to pay earned bonus compensation.  Compl. ¶¶ 61–109.  In his complaint and his later pleadings, Fox asserts that the arbitration agreement with C2 is unenforceable because the provisions regarding the filing of administrative claims, the statute of limitations, discovery, and fee-sharing are unconscionable.  Compl. ¶ 16; Pl.'s Opp. to Defs.' Mot. to Dismiss [Dkt. # 24] ("Pl.'s Opp.") at 18–19.  He further argues that he did not agree to arbitrate his disputes with CWS because CWS did not sign the arbitration agreement.  Compl. ¶ 15.

After removing the case to this Court, the C2 defendants ("C2") filed a motion to compel arbitration and dismiss Fox's complaint, or, in the alternative, to stay the underlying proceedings

pending the outcome of the arbitration.  C2 Mem. in Supp. of Mot. to Compel Arb. [Dkt. # 6] ("C2 Mem.") at 1.   In its motion, C2 contends that the arbitration agreement is not unconscionable but to address Fox's concerns about the cost of arbitration, it offered to waive the fee-sharing provision and bear all the arbitration costs.  C2 Mem. at 10–11.  The CWS defendants ("CWS") also moved to compel arbitration and dismiss Fox's complaint under Federal Rules of Civil Procedure 12(b)(1) and (b)(6), or, in the alternative, to stay the proceedings pending arbitration under Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*.  CWS and Hameed Mot. to Dismiss, or Stay Ct. Proceedings and Compel Arb. and Mem. in Supp. [Dkt. # 7] ("CWS Mem.") at 1.  In its motion, CWS adopts C2's arguments regarding the enforceability of the arbitration agreement.  *Id*. at 2.  CWS also asserts that it was party to that arbitration agreement, and that even if the Court concludes otherwise, it should nonetheless compel arbitration of Fox's claims against CWS because they are intertwined with the claims against the remaining defendants.  *Id*. at 3–6.

In opposition to defendants' motions, Fox argues that defendants' waiver of the fee-sharing provision "cannot save the agreement from a finding of unconscionability" because since the agreement does contain a severability clause, defendants cannot unilaterally alter it by waiving the fee-sharing provision.  Pl.'s Opp. at 16–17.  Defendants have filed additional briefs in support of their motions.  *See* C2 Reply; CWS Reply in Supp. of Mot. to Dismiss [Dkt. # 25] ("CWS Reply").

## STANDARD OF REVIEW

The appropriate standard of review for a motion to compel arbitration is the summary judgment standard under Federal Rule of Civil Procedure 56(c).  *See Aliron Int'l., Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008).  "How the parties style the

motion seeking arbitration is not determinative." *Booker v. Robert Half Int'l, Inc.*, 315 F. Supp. 2d 94, 99 (D.D.C. 2004) ("*Booker I*") *aff'd*, 413 F.3d 77, 81 (D.C. Cir. 2005) ("*Booker II*"). Under this standard, the party seeking to compel arbitration must first present "evidence sufficient to demonstrate an enforceable agreement to arbitrate." *Hill v. Wackenhut Services Int'l*, 865 F. Supp. 2d 84, 89 (D.D.C. June 7, 2012), quoting *SmartText Corp. v. Interland*, *Inc.*, 296 F. Supp. 2d 1257, 1263 (D. Kan. 2003). "The burden then shifts to [the non-moving party] to raise a genuine issue of material fact as to the making of the agreement, using evidence comparable to that identified in Fed. R. Civ. P. 56." *Id.* (internal quotation marks and citation omitted). The Court will compel arbitration if the pleadings and the evidence show that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Booker I*, 315 F. Supp. at 99, quoting Fed. R. Civ. P. 56(c).

The existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record. . . ." Fed. R. Civ. P. 56(c)(1)(A). In assessing a party's motion, "[a]ll underlying facts and inferences are analyzed in the light most favorable to the non-moving party." *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010), citing *Anderson*, 477 U.S. at 247.

## ANALYSIS

By enacting the Federal Arbitration Act, Congress adopted "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to

the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983). Specifically, the FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable save upon any grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. However, since arbitration is a matter of contract, parties cannot be compelled to arbitrate their disputes unless they have agreed to do so. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943–44 (1995). When one party resists arbitration, the opposing party may petition any United States district court that would otherwise have subject-matter jurisdiction "for an order directing that such arbitration proceed in the manner provided for in [their written arbitration] agreement." 9 U.S.C. § 4. When presented with such a motion, the court should bear in mind that the FAA creates a strong presumption favoring the enforcement of arbitration agreements, and that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24–25.

In this case, Fox argues that the Court should deny defendants' motions to compel arbitration because (1) his arbitration agreement with C2 is unconscionable and thus unenforceable, and (2) CWS is not a party to the agreement. These arguments are unpersuasive.

## I. The Arbitration Agreement Between Fox and C2 Is Not Unconscionable and Thus Enforceable

Fox does not dispute the existence of an arbitration agreement with C2; rather he argues that the "agreement to arbitrate with C2 . . . is so pervaded with unconscionable provisions that it cannot be enforced by any of the defendants." Pl.'s Opp. at 11. "Like other contracts, . . . [arbitration agreements] may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Rent-A-Center, West, Inc. v. Jackson*, 130 S.Ct. 2772, 2776 (2010), quoting *Doctor's Assocs., Inc. v. Cassarotto*, 517 U.S. 681, 687 (1996). State law governs these contract-based challenges and D.C. law governs the enforceability of this

arbitration agreement because there is no choice of law provision in the Agreement designating another state's law be followed.  *See Booker I*, 315 F. Supp. 2d at 98–99.  The parties have also accepted the application of D.C. law by asserting arguments based on D.C. law in their briefs.

Under D.C. law, a court can void a contract on the grounds that it is unconscionable if the party seeking to avoid the contract proves that the contract was both procedurally and substantively unconscionable.  *See Urban Invs., Inc. v. Branham*, 464 A.2d 93, 99 (D.C. 1983); *see also Smith, Bucklin & Assoc., Inc. v. Sonntag*, 83 F.3d 476, 480 (D.C. Cir. 1996).

A. <u>The Arbitration Agreement Is Not Procedurally Unconscionable</u>

Fox argues that the arbitration agreement is procedurally unconscionable because it was presented to him on a "take it or leave it basis and buried within a larger series of new employee documents sent to him electronically for acknowledgement," and CWS and C2 did not disclose that they were joint-employers.  Pl.'s Opp. at 13.  A contract is procedurally unconscionable where a party lacked meaningful choice as to whether to enter the agreement.  *Urban Invs.*, 464 A.2d at 99.  "Whether a meaningful choice is present in a particular case can only be determined by consideration of all the circumstances surrounding the transaction."  *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965).  Specifically, the court must ask whether "each party to the contract, considering his obvious education or lack of it, ha[d] a reasonable opportunity to understand the terms of the contract, or [whether] the important terms [were] hidden in a maze of fine print and minimized by deceptive [] practices."  *Id.*

The evidence in this case demonstrates that Fox had a meaningful choice as to whether to sign the arbitration agreement.  First, the fact that the Agreement was presented to Fox as a condition of employment without further negotiation does not render it unenforceable.  *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991) ("Mere inequality in bargaining power [ ] is not a sufficient reason to hold that arbitration agreements are never enforceable in

the employment context.").  Second, the Agreement was not "hidden in a maze of fine print" but was presented as separate document with the title "**AGREEMENT TO ARBITRATE**" in all capital letters and in bold font.  Immediately before the signature line, the Agreement also stated in capital letters:

> I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS AGREEMENT, THAT I UNDERSTAND ITS TERMS, THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN C2 AND ME RELATING TO THE SUBJECTS COVERED IN THIS AGREEMENT ARE CONTAINED IN IT, AND THAT I HAVE ENTERED INTO THIS AGREEMENT AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY THE COMPANY OTHER THAN THOSE CONTAINED IN THE AGREEMENT ITSELF.  I FURTHER ACKNOWLEDGE THAT I HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH MY PERSONAL LEGAL COUNSEL AND HAVE AVAILED MYSELF OF THAT OPPORTUNITY TO THE EXTENT THAT I WISH TO DO SO.

Agreement to Arbitrate at 3.

Third, Fox's assertion that he did not "understand that by acknowledging the purported agreement that he was agreeing to its terms," Pl.'s Opp. at 8, is immaterial to the determination of the Agreement's validity.  *Nur v. K.F.C., USA, Inc.*, 142 F. Supp. 2d 48, 51 (D.D.C. 2001) ("That [the plaintiff] may not have comprehended the implications of his decision [to sign the arbitration agreement] is irrelevant as to whether the agreement is valid.").  What matters is that Fox had a fair opportunity to review the Agreement, and he does not contend that he failed to understand its terms.  *See Paterson v. Reeves*, 304 F.2d 950, 951 (D.C. Cir. 1962) ("One who signs a contract which he had an opportunity to read and understand is bound by its provisions.").[1]

---

1      The fact that Fox was the Director of Bids and Proposals/Chief Engineer at CWS and that he describes himself in his complaint as having "more than 40-years of experience," Compl. ¶ 10, demonstrate that he was not lacking the education necessary to understand the terms of the agreement.

Fourth, that Fox received and signed the Agreement electronically does not render it unconscionable: "a contract . . . may not be denied legal effect, validity, or enforceability solely because an electronic signature or electronic record was used in its formation."   15 U.S.C. § 7001(a).   Fifth, Fox's alleged lack of knowledge about C2 and CWS's co-employment relationship is not relevant to the enforceability of the Agreement with C2:   C2 gave Fox the Agreement and Fox signed it, thereby demonstrating his desire to be bound by its terms.   Lastly, the employment offer letter, which Fox acknowledges that he accepted, expressly notified Fox that the employment relationship would be subject to an agreement to arbitrate disputes.

The cases that Fox cites to support his argument of procedural unconscionability are inapposite because they do not arise in the employment context or they apply the law of a different state.   *See* Pl.'s Opp. at 12-13, citing *Morris v. Capitol Furniture & Appliance Co.*, 280 A.2d 775, 776 (D.C. 1971) (holding that a consumer contract for the purchase of furniture was not unconscionable where the plaintiff was able to buy the goods from another seller); *Toledano v. O'Connor*, 501 F. Supp. 2d 127, 138–39 (D.D.C. 2007) (applying California contract law to an agreement to arbitrate a dispute over book royalties).   Therefore, Fox has failed to allege facts demonstrating that the Agreement is procedurally unconscionable.

B. Substantive Unconscionability

Fox next avers that the Agreement is substantively unconscionable because the statute of limitations period is impermissibly short, the fee-sharing provision is invalid, discovery is extremely limited, and the Agreement prohibits the filing of administrative discrimination

claims.  Pl.'s Opp. at 13–19.[2]  A contract is substantively unconscionable if the contract terms are unreasonably favorable to one party.  *Urban Invs.*, 464 A.2d at 99.

> Substantive unconscionability requires an assessment of whether the contract terms are so outrageously unfair as to shock the judicial conscience.  A substantively unconscionable contract is one that "no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other."

*Hill*, 865 F. Supp. 2d at 95, quoting *Hume v. United States*, 132 U.S. 406, 411 (1889).  The present case does not meet this standard.

### 1.  Statute of Limitations and Administrative Claims

Fox contends that the statute of limitations and administrative claims provisions of the Agreement are unconscionable because they deprive him of the ability to enforce his substantive rights.  Compl. ¶ 16; Pl.'s Opp. at 13, 18–19.  The statute of limitations provision requires the aggrieved party to notify "the other party within six (6) months of the date that party first has knowledge of the event giving rise to the Claim.  Otherwise, the claim shall be void and deemed waived even if there is a federal or state statute of limitations that would have given more time to pursue such Claim."  Agreement to Arbitrate at 1.  The Agreement also requires all parties to "agree not to initiate or prosecute any lawsuit or administrative action in any way related to any Claim covered by this Agreement . . . ."  *Id.*

The "party resisting arbitration on the ground that the terms of an arbitration agreement interfere with the effective vindication of statutory rights bears the burden of showing the

---

2  These are the only issues that remain.  Fox initially challenged the enforceability of the Agreement because of the "extremely limited judicial review of an arbitrator's decision."  Compl. ¶ 16.  But as defendants correctly point out, in his opposition, Fox did not address any of defendants' arguments regarding the sufficiency of judicial review of an arbitration award.  C2 Reply at 5.  Therefore, the Court will consider Fox's arguments regarding judicial review as conceded.  *See FDIC v. Bender*, 127 F.3d 58, 67–68 (D.C. Cir. 1997) (when a party does not address arguments advanced by her opponent, the court may treat those arguments as conceded).

likelihood of such interference." *Booker II*, 413 F.3d at 81, citing *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 406–07 (2003) (allowing arbitration of plaintiff's RICO claims pursuant to an arbitration agreement that precluded punitive damages because the plaintiff did not show that the arbitrator would interpret the bar against punitive damages to also preclude treble damages, which was allowed under RICO). Fox cannot meet this standard. With respect to the statute of limitations issue, Fox notified his employers of his claims four days after he was terminated so his ability to assert his substantive rights was not affected by the Agreement's provisions. *See* Fox Letter to CWS and C2, Ex. 3 to Compl. Similarly, he filed an EEOC claim five months after his termination and thus he cannot show that the administrative claims provision "interfere[d] with the effective vindication of his statutory rights" under federal civil rights laws or the EEOC's Enforcement Guidance. *See* EEOC Claim. Therefore, the statute of limitations and the administrative claims provisions do not render the Agreement unenforceable.

2. *Discovery Provision*

Fox also argues that the discovery provision in the Agreement is "extremely limited" because it allows each party to take the deposition of only one individual and any expert witness designated by another party. Compl. ¶ 16. To be enforceable, an arbitration agreement must provide for more than minimal discovery. *Cole v. Burns Int'l Sec. Servs., Inc.*, 105 F.3d 1465, 1482 (D.C. Cir. 1997). An arbitration agreement that leaves the decision about which discovery tool to use and in what manner to the discretion of the arbitrator will not be invalidated based on speculation that the arbitrator may not allow adequate discovery. *See Booker II*, 413 F.3d at 82 (holding that an arbitration agreement that gave the arbitrator discretion about what discovery to allow was enforceable despite the plaintiff's speculation that the arbitrator might not provide him with adequate discovery). Here, the Agreement allows the arbitrator to order additional discovery if the requesting party shows "substantial need" for such discovery. Agreement to

Arbitrate at 2.  Since the arbitrator has the discretion to order additional discovery as necessary, "speculation about what *might* happen in the arbitral forum is plainly insufficient to render the agreement to arbitrate unenforceable." *See Booker II*, 413 F.3d at 82.

    *3.  Fee-Sharing Provision*

    Fox lastly contends that the Agreement's requirement that he "share the fees and costs of the arbitrator" and pay for a court reporter violates "the D.C. Circuit's seminal decision in *Cole*, [which held that] it is substantially unconscionable to require an employee to pay all or part of the arbitrator's fee." Pl.'s Opp. at 14.

    In *Cole*, an employer sought to compel an employee to submit his Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII") employment discrimination claim to arbitration pursuant to an arbitration agreement between the parties. 105 F.3d at 1467.  Since the arbitration agreement was silent as to who would pay for the arbitrator's fees, the court went on to decide who should bear the cost. *Id.* at 1484.  The court reasoned that requiring an employee to pay arbitration fees, other than "reasonable costs" analogous to federal court "filing fees and other administrative expenses," would be "prohibitively expensive" and deter the employee from "pursu[ing] his statutory claims." *Id.* at 1484.  It added that since arbitration is meant to be a reasonable substitute for a judicial forum, it "would undermine Congress's intent to prevent employees who are seeking to vindicate statutory rights from gaining access to a judicial forum and then require them to pay for the services of an arbitrator when they would never be required to pay for a judge in court." *Id.*  The court therefore held that an employee "could not be required to agree to arbitrate his public law claims as a condition of employment if the arbitration agreement required him to pay all or part of the arbitrator's fees and expenses." *Id.* at 1485.

    After *Cole*, the Supreme Court in *Green Tree Fin. Corp.-Ala. v. Randolph*, considered the validity of an arbitration agreement that was similarly silent on the payment of filing fees,

arbitrators' costs, and other arbitration expenses. 531 U.S. 79, 84 (2000). The *Green-Tree* Court rejected the plaintiff's argument that "the arbitration agreement's silence with respect to costs and fees creates a 'risk' that she will be required to bear prohibitive arbitration costs if she pursues her claims in an arbitral forum." *Id.* at 90–92. Instead, it concluded that "where, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* at 92.

Since *Green Tree*, the D.C. Circuit has not addressed whether *Cole* remains fully intact but it has limited its application. In *Brown v. Wheat First Sec., Inc.*, the D.C. Circuit considered whether the *Cole* per se rule invalidating arbitration agreements requiring an employee to pay any part of the arbitrator's fees applies when the employee is pursuing non-statutory claims. 257 F.3d 821, 823 (D.C. Cir. 2001). In answering this question, the court explained that the *Cole* decision was based on balancing the goals of two competing federal statutes: promoting arbitration under the FAA and preventing employment discrimination under Title VII. *Id.* at 826–27. However, *Cole*'s "central rationale – respecting congressional intent [in enacting the two competing federal statutes] – does not extend beyond the statutory context." *Id.* at 825. Therefore, the court concluded that the *Cole* per se invalidation rule did not apply where the plaintiff is pursuing a non-statutory claim and those cases should to be resolved in favor of the only federal law involved, the FAA's "liberal federal policy favoring arbitration agreements." *Id.*

*Brown*'s limitation of *Cole* and its rationale has led a court in this district to conclude that *Cole*'s per se invalidation rule applies only in the context in which it was originally announced, i.e. when an employee is pursing federal statutory claims. *Nelson v. Insignia/Esg, Inc.*, 215 F.

Supp. 2d 143, 156–57 (D.D.C. 2002).  But the court said, it "does not apply [when] only District of Columbia statutory and common law claims are being pursued."  *Id.* at 157.  In those circumstances, the party seeking to invalidate the agreement on the basis that it would be prohibitively expensive must demonstrate the likelihood of incurring such costs pursuant to the Supreme Court's decision in *Green-Tree*.  *Id.*

Since Fox is pursuing claims under the DCHRA and D.C. common law, the Court will not apply the *Cole* rule because *Cole*'s "central rationale – respecting congressional intent" is not directly implicated.  *See id.* at 156.  Instead, the Court will apply the *Green-Tree* standard and analyze whether Fox has met "the burden of showing the likelihood of incurring [prohibitively expensive arbitration] costs," deterring him from vindicating his rights.  *See Green Tree*, 531 U.S. at 92.  The Agreement states "[a]ll parties . . . agree to share the fees and costs of the arbitrator. . . . Each party will deposit funds for its share of the arbitrator's fee, in an amount and manner determined by the arbitrator. . . . "  Agreement to Arbitrate at 2.  The Court is not persuaded by Fox's contention that "the plain meaning of this provision is that the arbitrator determines the *total amount* of his or her fee to be paid by all the parties and the amount required to be deposited in advance of the hearing."  Pl.'s Opp. at 15.  Rather, as defendants argue, the Agreement's requirement that each party "deposit funds for its share of the arbitrator's fee, in an amount . . . determined by the arbitrator" gives the arbitrator discretion to determine the apportionment of the arbitration fees.[3]  *See* C2 Mem. at 10–11.  Since the Agreement gives the arbitrator discretion to apportion the arbitrator's fees between the parties, Fox's speculation

---

3      Even if the Court determines that this provision is ambiguous, the Court's interpretation would not change because "any ambiguities in the language of the agreement should be resolved in favor of arbitration."  *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002).

regarding the costs that he might incur from the arbitration is insufficient to render it unenforceable.

Moreover, Fox cannot show that he would incur "prohibitively expensive" costs from the arbitration because defendants have waived the fee-sharing provision and have agreed to "bear the entirety of the arbitrator's fees," C2 Mem. at 10. *See Nelson*, 215 F. Supp. 2d at 157 (enforcing an arbitration agreement with a fee-splitting provision because "the defendant's offer to pay all arbitration fees and expenses effectively obviated any concerns the plaintiff may have raised regarding her ability to vindicate her claims in an arbitral forum because of the fee-splitting provision"). Defendants' waiver of the fee-sharing provision also distinguishes this case from the situation that the court addressed in *Cole* because Fox will not be required to pay any of the arbitrator's fees and expenses.

Regarding Fox's argument that he cannot be required to pay for a court reporter, *Cole* does not bar arbitration agreements that require the employee to pay administrative fees. *See LaPrade v. Kidder, Peabody & Co., Inc.*, 246 F.3d 702, 707–08 (D.C. Cir. 2001) (concluding that requiring the plaintiff to pay a limited amount of arbitral forum fees, such as a filing fee or fees solely related to non-statutory claims is not barred by *Cole*). Thus, the term providing that Fox may be required to pay administrative costs, such as a court reporter's fees, is not unconscionable because he would have to pay for court transcripts in D.C. federal and local courts. *See id.* at 707 (stating that arbitration is not required to be cost-free for the plaintiff, just as litigating in court would not be).

Therefore, the fee-sharing provision is not substantively unconscionable because the risk that Fox might be saddled with prohibitive costs based on the language of the Agreement is too

speculative, and in any event, defendants' waiver of the fee-sharing provision has eliminated this risk.[4]

The Court concludes that the arbitration agreement between Fox and C2 is enforceable because Fox has not demonstrated that it is procedurally or substantively unconscionable.

## II. The Court Will Compel Fox To Arbitrate His Claims With CWS

Fox also contends that the Court should not compel him to arbitrate his claims against CWS because CWS is a non-signatory and thus not a party to the arbitration agreement. Pl.'s Opp. at 6–11. Under the doctrine of estoppel, a signatory to an arbitration agreement may be compelled to arbitrate with a non-signatory when the non-signatory is seeking to resolve issues that are intertwined with an agreement that the signatory has signed. *See Khan v. Parsons Global Servs., Ltd.*, 480 F. Supp. 2d 327, 341–42 (D.D.C. 2007), *rev'd on other grounds*, 521 F.3d 421 (D.C. Cir. 2008).[5]

In *Khan*, the plaintiffs asserted identical tort claims against one of the plaintiff's employers and the employer's agents. *Id.* at 341. The employer and its agents moved to compel the plaintiffs to arbitrate their claims pursuant to an arbitration agreement contained in the plaintiff's employment agreement. *Id.* at 331–32. The plaintiffs argued that even if their claims against the employer had to be arbitrated pursuant to the arbitration agreement, they could not be

---

[4]     Plaintiff relies on *Booker* to support his argument that defendants' waiver of the fee-sharing provision "cannot save the agreement from a finding of unconscionability" because (a) the agreement does not contain a severability clause allowing such waiver and (b) allowing defendants to unilaterally waive the fee-sharing provision would "encourage employers to include onerous provisions in order to discourage employees from bringing claims in the first place." Pl.'s Opp. at 16–17. But *Booker* is not on point because it analyzes the severability of an unenforceable punitive damages clause. *See Booker II*, 413 F.3d at 83. Here, the Court's decision to uphold the fee-sharing provision is based on its conclusion that the provision is valid under *Green-Tree* and not based solely on defendant's waiver or the severance of the provision.

[5]     Since the Court will compel Fox to arbitrate his claims against CWS based on the doctrine of estoppel, it need not reach a decision on whether CWS is a party to the agreement.

17

required to arbitrate their claims against the remaining defendants who were not signatories to the employment agreement (or the arbitration provision it contained).  *Id.* at 341.  The court disagreed and explained that courts in other circuits have been "willing to estop a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed."  *Id.*, quoting *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995) (internal quotation marks omitted).  Applying this principle, the court compelled the plaintiffs to arbitrate their disputes with the non-signatory defendants because:  (1) their claims against the signatory and non-signatory defendants were identical; and (2) the claims arose from one plaintiff's employment with defendants and were thus "intertwined with the [plaintiff's] employment agreement (and the arbitration therein)."  *Id.*

Similarly, this Court will compel Fox to arbitrate his claims against CWS under the doctrine of estoppel.[6]  Estoppel is a "bar that prevents one from asserting a claim or right that contradicts what one has said or done before . . . ."  Black's Law Dictionary 629 (9th ed. 2009).  As in *Khan*, Fox's claims against all defendants are identical, and further his claims arose from his employment with CWS and are thus intertwined with his employment offer letter from CWS.  Although Fox never signed the offer letter, he repeatedly asserts in his complaint that he "accepted" it and relied on its terms.  Compl. ¶¶ 13, 77, 80, 83, 88, 99.  Notably, one of the terms

---

6      Fox cites *Toledano v. O'Connor*, 501 F. Supp. 2d 127, 153 (D.D.C. 2007) for the proposition that in the D.C. Circuit, "there is no precedent . . . compelling a party to an arbitration agreement to arbitrate with a non-signatory on the basis of equitable estoppel."  Pl.'s Opp. at 10.  But that the D.C. Circuit has not yet decided this issue does not preclude this Court from opining on it especially when other courts in this district have adopted a similar approach.

of the employment offer letter was that "any disputes arising out of the employment relationship will be resolved by arbitration . . . ."[7] Employment Offer Letter at 2.

Despite admitting that he accepted the terms of the employment offer letter – which include an agreement to arbitrate claims arising out of his employment with CWS – Fox argues that requiring him to arbitrate his claims against CWS under the doctrine of estoppel "would create an unfair asymmetry where CWS could compel Plaintiff to arbitrate his claims but Plaintiff could not compel CWS to arbitrate its potential claims against him." Pl.'s Opp. at 10. This argument fails because the arbitration clause in the employment offer letter requires arbitration of all disputes arising out of the employment relationship regardless of whether those claims are initiated by Fox or CWS. Moreover, Fox's acceptance of the employment letter is critical to his case because a number of his claims are based on his alleged reliance on the terms of the letter, specifically the provisions regarding compensation and benefits. Compl. ¶¶ 76–91, 98–105. As Fox put it, allowing him to pursue claims based on the employment offer letter and to simultaneously avoid the arbitration clause in that letter "would create [an] unfair asymmetry."

The Court will therefore compel Fox to arbitrate his disputes with CWS under the doctrine of estoppel because the issues CWS is seeking to resolve in arbitration are intertwined

---

7       Neither party addressed in their pleadings whether this statement constitutes a binding arbitration agreement between Fox and CWS. Under D.C. law, "an enforceable contract does not exist unless there has been a 'meeting of the minds' as to all material terms." *Bailey v. Federal Nat. Mortg. Ass'n*, 209 F.3d 740, 746 (D.C. Cir. 2000), citing *Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236, 1238 (D.C. 1995). The arbitration clause in the employment offer letter does not meet this standard because it did not outline the material terms that would govern arbitration between Fox and CWS such as discovery, type of relief available, payment of arbitration fees, etc. *See Cole*, 105 F.3d at 1482 (concluding that an arbitration agreement is enforceable so long as it "(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum").

with the claims against the C2 defendants and with the employment offer letter that Fox has

accepted (and the arbitration clause it contained).[8]

---

8       Fox also argues that the *Khan* decision was based on the fact that the non-signatories who
were seeking to compel arbitration were not the plaintiff's direct employer and the plaintiff's
claims against the non-signatories were derivative of his claims against his direct employer, who
did sign the arbitration agreement.  Pl.'s Opp. at 8-9.  Based on this interpretation, Fox argues
that *Khan* is not applicable to his case because here, CWS, the non-signatory, was his direct
employer and his claims against CWS arise out of that direct employment relationship and not
out of his relationship with C2.  *Id.* at 9.  But the *Khan* decision was not based on whether the
non-signatory was the direct employer or its agent; rather it was based on the theory of estoppel.
*See Khan*, 480 F. Supp. 2d at 341.  Therefore, that the facts of this case are not exactly the same
as those in *Khan* does not undermine the Court's estoppel analysis.

**CONCLUSION**

The Court concludes that the arbitration agreement between Fox and C2 is not unconscionable and therefore enforceable.  Additionally, although CWS is not a signatory to the arbitration agreement, the Court will nonetheless compel Fox to arbitrate his disputes with CWS under the doctrine of estoppel.  Accordingly, the Court will grant defendants' motions to compel arbitration and dismiss the case.[9]  A separate order will issue.


AMY BERMAN JACKSON
United States District Judge

DATE: February 1, 2013

---

9       The Court will dismiss this case rather than stay it pending arbitration, in accordance with the approach adopted by other courts when all claims must be submitted to arbitration.  *See Booker I,* 413 F.3d at 85–86 (affirming the district court's dismissal of a case where all claims had to be submitted to arbitration); *Nelson*, 215 F. Supp. 2d at 158, citing 9 U.S.C. § 3 (stating that "[w]hile the FAA provides that once arbitration is compelled by a district court it 'shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement,'" when all of the issues presented in a case are arbitrable, dismissal is warranted.).  Although, defendants also requested a "stay pending arbitration" as a secondary remedy, the Court's decision is in accordance with their primary request for dismissal.